**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LYNNE H. WASHBURN, | CASE NO. 1:15-cv-00674-CCC-GBC |
| | |
| Plaintiff, | (CHIEF JUDGE CONNER) |
| | |
| | (MAGISTRATE JUDGE COHN) |
| v. | |
| | REPORT AND RECOMMENDATION |
| CAROLYN W. COLVIN, | TO VACATE THE DECISION OF |
| COMMISSIONER OF | THE COMMISSIONER AND |
| SOCIAL SECURITY, | REMAND FOR FURTHER |
| | PROCEEDINGS |
| | |
| Defendant. | Docs. 1, 8, 9, 12, 13, 14 |

## REPORT AND RECOMMENDATION

### I.    Introduction

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Defendant") denying the application of Lynne H. Washburn ("Plaintiff") for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act, 42 U.S.C. §§401-433, 1382-1383 (the "Act") and Social Security Regulations, 20 C.F.R. §§404.1501 *et seq.*, §§416.901 *et. seq.*[1] (the "Regulations"). Plaintiff submitted a treating source opinion that was supported by objective medical findings. Doc. 9. The only evidence inconsistent with this opinion, aside from the ALJ's lay

---

[1] Part 404 governs DIB, Part 416 governs SSI. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000). Like *Sims*, these regulations "are, as relevant here, not materially different" and the Court "will therefore omit references to the latter regulations." *Id.*

reinterpretation of evidence, were two non-treating, non-examining medical opinions from sources who did not review a complete record. Doc. 9. Several cases pending before or recently reviewed by the undersigned present a common issue: whether an opinion from a non-examining, non-treating source who did not review a complete record constitutes substantial inconsistent evidence to assign less than controlling weight to a treating source medical opinion.[2]

The ALJ "must…adopt" any medical opinion entitled to controlling weight. SSR 96-5p. The Regulations afford special deference to treating sources ("treating source rule").[3] The ALJ must assign controlling weight to any well-supported treating source medical opinion unless the ALJ identifies substantial inconsistent evidence. *See* 20 C.F.R. §404.1527(c)(2). The Third Circuit consistently holds that lay reinterpretation of medical evidence is not substantial evidence to decline to

---

[2] 1:15-cv-01117-CCC (Langston); 1:15-cv-00619-CCC (Reeves); 1:15-cv-00774-CCC (Hulstine); and the present case. In each of the three previous cases, the undersigned recommended remand. In *Langston*, the Commissioner objected to the Report and Recommendation, but the Court overruled the objections in part and remanded the case. In *Reeves* and *Hulstine*, the Commissioner waived objections.

[3] The Court notes that, on September 9, 2016, the SSA proposed to eliminate the treating source rule and stop providing special deference to treating sources. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 81 FR 62560-01 ("we would consider the persuasiveness of medical opinions and prior administrative medical findings from all medical sources equally using the factors discussed below. We would not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding or medical opinion, including from an individual's own healthcare providers"). This proposed revision is contained in a Notice of Proposed Rule Making and the comment period has not yet closed, so it is unclear whether the SSA will adopt this change. *Id.*

adopt a treating source medical opinion. *Burns v. Colvin,* No. 1:14–CV–1925, 2016 WL 147269 (M.D. Pa. Jan. 13, 2016) (internal citations omitted). The Regulations retained, rather than abrogated, this precedent. *Id.* Thus, the ALJ may not assign less than controlling weight to a well-supported treating source medical opinion with lay reinterpretation of medical evidence. The Third Circuit has also held that a medical opinion from a non-treating, non-examining source who did not review a complete record was "not substantial." *Morales v. Apfel*, 225 F.3d 310 (3d Cir. 2000).[4] In *Brownawell v. Comm'r Of Soc. Sec.*, 554 F.3d 352 (3d Cir. 2008), the only other precedential decision addressing an ALJ who relied on a non-treating, non-examining source who did not review a complete record to reject a treating source opinion, the Third Circuit also remanded. *See Brownawell*, 554 F.3d at 352. In contrast, in *Brown v. Astrue*, 649 F.3d 193 (3d Cir. 2011), the Third Circuit affirmed where there were two non-treating opinions, one from a source who reviewed the entire record. *Id.*

*Brown* is the only precedential Third Circuit case since the Social Security Administration ("SSA") codified the controlling weight provision in 1991 that affirms an ALJ who credits a non-treating medical opinion over a treating source medical opinion. Other cases frequently cited by Defendant, *Chandler v. Comm'r*

---

[4] The Social Security Administration abolished the policy of non-acquiescence in 1990 with the promulgation of 20 C.F.R. §404.985. *Id.* An ALJ must follow all precedential Circuit Court decisions if more than 120 days have passed since the decision was issued. *See* 20 C.F.R. §404.985(b).

*of Soc. Sec.*, 667 F.3d 356 (3d Cir. 2011); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 201 (3d Cir. 2008); and *Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999), do not address this issue. In *Chandler*, there were no treating source medical opinions before the ALJ. In *Johnson*, the treating source medical opinion supported the ALJ's denial. In *Plummer*, the ALJ rejected one treating opinion with three other treating opinions. Consequently, the relevant Third Circuit cases are *Morales*, *Brownawell*, *Diaz*, and *Brown.*

This case law is consistent with SSR 96-6p, which provides that an ALJ may only credit a non-treating, non-examining source over a treating source in "appropriate circumstances," such as when the non-treating, non-examining source was able to review a "complete case record…which provides more detailed and comprehensive information than what was available to the individual's treating source." *Id.* This may be only an example of "appropriate circumstances," but the phrase should be construed as requiring a similarly compelling reason. *See Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 223, 128 S. Ct. 831, 838, 169 L. Ed. 2d 680 (2008) ("the general term should be understood as a reference to subjects akin to the one with specific enumeration"). SSR 96-6p is consistent with SSR 96-2p, which provides that "in cases at the administrative law judge (ALJ) or Appeals Council (AC) level, the ALJ or the AC may need to consult a medical expert to gain more insight into what the clinical signs and laboratory findings signify in

order to decide whether a medical opinion is well-supported or whether it is not inconsistent with other substantial evidence in the case record." *Id.*

*Morales*, *Brown*, and SSR 96-6p are all consistent with the prohibition on lay reinterpretation of evidence, because a source who reviews a complete record obviates the need for the ALJ to reinterpret medical evidence. Read together, 20 C.F.R. §404.1527(c)(2), SSR 96-6p, SSR 96-5p, *Morales*, *Brownawell*, and *Brown* indicate that, generally, the ALJ will lack substantial evidence to assign less than controlling weight to a treating source opinion with only lay reinterpretation of medical evidence or an opinion from a non-treating, non-examining source who did not review a complete record. Harmonizing the Regulations, case law, SSRs, and other sources of authority into a consistent statement of the law regarding the treating physician rule reflects "the need for efficient administration of an obligatory nationwide benefits program" given "more than 2.5 million claims for disability benefits [filed] each year" because "the treating physician rule works to foster uniformity and regularity in Social Security benefits determinations made in the first instance by a corps of administrative law judges." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833, 123 S. Ct. 1965, 1971, 155 L. Ed. 2d 1034 (2003) (internal citations omitted). The "massive unexplained differences in the rate at which ALJs grant or deny benefits" heightens the need for the Courts to articulate clear rules. Harold J. Krent & Scott Morris, *Inconsistency and Angst in*

*District Court Resolution of Social Security Disability Appeals* at 5 (Chi.-Kent Coll. of Law, Research Paper No. 2014-30, 2014), *available at* http://papers.ssrn.com/sol3/papers.cfm? abstract_id=2530158.

Here, the non-examining, non-treating sources reviewed only about fifty pages of medical records. (Tr. 304-55). About three hundred pages of medical records were submitted after the non-examining, non-treating opinions. (Tr. 365-663). The records reviewed by these sources indicate that Plaintiff was not yet using a cane. (Tr. 304-55). After the opinions were authored, Plaintiff began reporting that she needed to use a cane, and her treating source opined that it was necessary. (Tr. 583). The ALJ failed to include use of a cane in the RFC, did not explain why the cane usage was excluded, and did not elicit vocational expert testimony regarding the use of a cane. Doc. 9.

The Court finds that the ALJ failed to provide a sufficient reason to reject the treating source opinion. "Despite the deference due to administrative decisions in disability benefit cases, "[Courts] retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not supported by substantial evidence." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Smith v. Califano,* 637 F.2d 968, 970 (3d Cir.1981)).The Court recommends that Plaintiff's appeal be granted, the decision of the Commissioner

be vacated, and the matter be remanded for further proceedings and proper evaluation of the medical opinions.

## II.    Procedural Background

On March 2, 2012 and August 28, 2012, Plaintiff applied for DIB and SSI, respectively. (Tr. 185-96). On June 12, 2012, the Bureau of Disability Determination ("state agency") denied Plaintiff's DIB application (Tr. 119-28), and Plaintiff requested a hearing. (Tr. 133-34). On August 15, 2013, an ALJ held a hearing at which Plaintiff—who was represented by an attorney—and a vocational expert ("VE") appeared and testified. (Tr. 53-118).  On August 22, 2013, the ALJ found that Plaintiff was not entitled to benefits. (Tr. 34-52). Plaintiff requested review with the Appeals Council (Tr. 32--33), which the Appeals Council denied on March 20, 2015, affirming the decision of the ALJ as the "final decision" of the Commissioner. (Tr. 1-7). *See Sims v. Apfel*, 530 U.S. 103, 107 (2000).

On April 6, 2015, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) to appeal the decision of the Commissioner. (Doc. 1). On June 5, 2015, the Commissioner filed an answer and administrative transcript of proceedings. (Docs. 8, 9). On July 20, 2015, Plaintiff filed a brief in support of the appeal ("Pl. Brief"). (Doc. 12). On August 24, 2015, Defendant filed a brief in response ("Def. Brief"). (Doc. 13). On September 4, 2015, Plaintiff filed a brief in

reply ("Pl. Reply"). (Doc. 14). On January 11, 2016, the Court referred this case to the undersigned Magistrate Judge. The matter is now ripe for review.

### III.   Standard of Review and Sequential Evaluation Process

To receive benefits under the Act, a claimant must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). The Act requires that a claimant for disability benefits show that:

> He is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The ALJ uses a five-step evaluation process to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520. The ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing"); (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the

claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. §§ 404.1520. Before step four in this process, the ALJ must also determine Plaintiff's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e).

The disability determination involves shifting burdens of proof. The claimant bears the burden of proof at steps one through four.  If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that the claimant can perform. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability under the Act lies with the claimant. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

When reviewing the denial of disability benefits, the Court must determine whether substantial evidence supports the denial. *Johnson v. Commissioner of Social Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is "less than a preponderance" and "more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

## IV.   Relevant Facts in the Record

Plaintiff was born in 1970 and was classified by the Regulations as a younger individual through August 22, 2013, the date of the ALJ decision. (Tr. 37-48); 20 C.F.R. § 404.1563. Plaintiff has at least a high school education and past relevant work as a retail store manager. (Tr. 46). Plaintiff alleges onset of February 10, 2012, when she was hospitalized for Guillain-Barre disorder. (Tr. 39). Plaintiff established medically determinable, severe impairments of obesity, Hepatitis C, genotype I, mild degenerative changes of the cervical spine, degenerative changes of the thoracic spine with vertebral endplate spurring, and Guillain-Barre Syndrome. (Tr. 39). On August 22, 2013, the ALJ found that Plaintiff could perform a range of sedentary work. (Tr. 37-48)

On April 2, 2012, sixteen months prior to August 22, 2013, the date of the ALJ decision, non-treating, non-examining source Dr. Mari-Mayans reviewed Plaintiff's file and authored an opinion. (Tr. 120-23). Dr. Mari-Mayans opined that Plaintiff could perform a range of light work. (Tr. 120-23). Dr. Mari-Mayans reviewed about fifty pages of evidence, and was unable to review the additional 300 pages of evidence submitted after the opinion. Dr. Mari-Mayans characterized the evidence reviewed as showing that Plaintiff's Guillain-Barre disorder had "almost complete[ly] resol[ved]" after a four day hospital stay, and that she

continued to improve. (Tr. 122)..   Dr. Mari-Mayans provided the following

narrative explanation:

> The claimant has described daily activities that are significantly
> limited. This is consistent with the limitations indicated by other
> evidence in this case. She received treatment from a specialist for her
> impairments. She has received various forms of treatment for the
> alleged symptoms. The record reveals that the treatment has generally
> been successful in controlling those symptoms.

> Based on the evidence of record, the claimant's statements are found
> to be partially credible.

> These findings complete the medical portion of the disability
> determination.

(Tr. 123).

On June 12, 2012, fourteen months prior to August 22, 2013, the date of the

ALJ decision, non-treating, non-examining source Dr. Park reviewed Plaintiff's

file and authored an opinion. (Tr. 360).  Dr. Park concurred with Dr. Mari-Mayan's

opinion that Plaintiff could do light work. (Tr. 360).  Dr. Park did not review any

additional medical records. (Tr. 360). Dr. Park noted that there was "no updated"

medical examination. (Tr. 360).  Dr. Park explained that Plaintiff's condition was

expected to improve in six months, and specifically conditioned the opinion,

writing "unless there is additional positive [medical examination]." (Tr. 360).

Neither Dr. Park nor Dr. Mari-Mayans evaluated any medical impairments other

than obesity and Guillain-Barre disorder. (Tr. 123, 360). The records reviewed by

the non-examining sources indicate that Plaintiff was not yet using a cane. (Tr. 266).

On June 16, 2012, treating neurosurgeon Dr. Gliebus opined that Plaintiff "needs a cane to ambulate." (Tr. 583). This falls within the "broad definition" of medical opinion. *See Wrights v. Colvin*, No. 3:13-CV-02516-GBC, 2015 WL 2344948, at *10 (M.D. Pa. May 14, 2015) (citing 20 C.F.R. §1527(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.")). Plaintiff cites medical opinions from Dr. Haeckler. (Pl. Brief). Dr. Haeckler submitted several statements that do not meet the definition of medical opinion because they are on issues reserved to the Commissioner, specifically that she was unable to work full-time and was temporarily disabled. (Tr. 460-67). Dr. Haeckler also opined that Plaintiff could not perform repetitive movements with her hands, but the ALJ adopted this limitation in the RFC. (Tr. 42, 108, 466-67). Plaintiff repeatedly asserts that Dr. Haeckler limited Plaintiff to 75-80% of normal productivity, but that limitation is not found in Dr. Haeckler's records. (Pl. Brief at 12) (citing Tr. 466-67). Even if it was, limiting Plaintiff to 75-80% of "normal"

productivity does not mean that she would be entirely off-task for 20-25% of the day. (Tr. 113).

In April of 2012, Plaintiff reported that she had begun using a cane for balance and ambulation as requested by physical therapists. (Tr. 275). This is consistent with physical therapy records that were not submitted prior to the non-examining source opinions. (Tr. 563-65). These records show that Plaintiff experienced poor balance and poor gait. (Tr. 564). Plaintiff consistently reported that she walked with a cane from April of 2012 through the ALJ decision date. (Tr. 428, 430, 496, 523). Providers noted multiple objective findings, including extremity paresthesias and diminished sensation (Tr. 344); diminished extremity sensation (Tr. 585); weight gain (Tr. 586-91); severe vitamin D deficiency (Tr. 434); abnormal EMG findings (Tr. 368); lower extremity and core weakness (Tr. 419); motor deficits in the left lower extremity, antalgic gait, and positive bilateral facet loading (Tr. 586-91); decreased upper and lower extremity strength; decreased endurance; limited strength in her knees and hips; and significant limitations in walking (Tr. 491-99); elevated ANA level consistent with lupus (Tr. 460), sleep study indicating hypersomnolence (Tr. 421-25, 488-89); reduced reflexes, reduced vibration in both legs, and antalgic gait (Tr. 428-31);

This includes a Functional Capacity Evaluation, which indicated that "wobbling gait noted." (Tr. 496). The FCE was performed by a physical therapist,

so it is not a medical opinion. *See* 20 C.F.R. §404.1527(a). Plaintiff gave "maximal effort" and was cooperative. (Tr. 492). Plaintiff "utilized assistive device to safely complete activities." (Tr. 492). Plaintiff "could not implement a more normal pace when requested due to lower extremity weakness and fatigue." (Tr. 492). The FCE concluded that Plaintiff could perform light work on a regular and continuing basis. (Tr. 493). The FCE indicated that Plaintiff would have a "significant limitation" in walking and would be unable to walk more than 5% of the time. (Tr. 494). The physical therapist observed weakness in the upper and lower extremities that increased after the first day of testing. (Tr. 499).

## V.    Plaintiff Allegations of Error

## A.    Treating Source Medical Opinion

As an initial matter, remand is required because the ALJ did not acknowledge Dr. Gliebus's opinion that Plaintiff needed a cane to ambulate. As the undersigned explains in *Hulstine*, the definition of medical opinion contained in 20 C.F.R. §404.1527(a) is "broad." *See Wrights v. Colvin*, No. 3:13-CV-02516-GBC, 2015 WL 2344948, at *10 (M.D. Pa. May 14, 2015) (citing 20 C.F.R. §1527(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."). In

*Rice v. Colvin*, No. 3:13-cv-2879-MEM (M.D. Pa. Feb. 13, 2015), the undersigned

explained:

> Plaintiff asserts that "[A]n ALJ is not permitted to ignore an opinion by a physician addressing a patient's capacity to work." (Pl. Brief at 10) (citing *Reefer v. Barnhart*, 326 F.3d 376, 381-82 (3d Cir. 2003); *Burnett v. Commissioner of S.S.A.*, 220 F.3d 112, 121 22 (3d Cir. 2000); *Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986)). Defendant responds that "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." (Def. Brief at 18-19) (quoting *Hur v. Comm'r Soc Sec*, 94 F. App'x130, 133(3d Cir. 2004)). However, there *is* a requirement to evaluate every medical opinion. Section 1527(c) states that the ALJ "will evaluate every medical opinion we receive." *Id*. There is a heightened requirement in Section 1527(c)(2), which applies only to treating physicians. Section 1527(c)(2) states that ALJs "will *always give good reasons* in [the] *notice of determination or decision* for the weight we give your treating physician's opinion." *Id*. (emphasis added). A plain reading of this requirement indicates that an ALJ must always acknowledge a treating source opinion, and may not reject a treating physician's opinion with little or no explanation.
>
> In *Reefer*, the ALJ had acknowledged a treating source opinion, but did not explain why he gave it less weight than a state agency opinion. *Reefer,* 326 F.3d at 382. The Third Circuit explained, "[i]n so holding, the ALJ disregarded Dr. Stevens's contrary report without explaining why he did so, thereby ignoring our mandate in *Fargnoli*. Accordingly, remand is required." *Id*. Similarly, in *Brewster*, the ALJ acknowledged a treating source opinion, but did not explain why it was assigned less weight than the state agency opinion. *Brewster*, 786 F.2d at 585. The Court remanded, explaining that "the ALJ must make clear on the record his reasons for rejecting the opinion of the treating physician." *Id*. Moreover, there is a requirement to discuss significant probative evidence that contradicts the ALJ's conclusion. *See Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir.2001) ("Where there is conflicting probative evidence in the record, we recognize a particularly acute need for an explanation of the reasoning behind the ALJ's conclusions, and will vacate or remand a case where such an explanation is not provided.")

Defendant contends that the ALJ discharged her duty by citing Dr. Taylor's "treatment notes." (Def. Brief at 19). However, the plain language of the Regulations requires the ALJ to "always" provide "reasons" for the "weight" assigned to an "opinion." An ALJ cannot discharge this obligation if he does not acknowledge an opinion. Defendant has not cited to any case that upheld an ALJ decision that did not discuss all of the medical opinions. Thus, the ALJ's failure to mention the treating source opinion is a procedural error that requires remand. *See Ray v. Colvin*, 1:13-CV-0073, 2014 WL 1371585, at *21 (M.D. Pa. Apr. 8, 2014) ("The cursory manner in which the ALJ rejected Dr. Jacob's opinions runs afoul of the regulation's requirement to " give good reasons" for not crediting the opinion of a treating source upon consideration of the factors listed above. While there may be sufficient evidence in the record to support the ALJ's ultimate decision that Plaintiff was not under a disability, and, thus, the same outcome may result from remand, the court cannot excuse the denial of a mandatory procedural protection on this basis.").

Defendant attempts to use post-hoc rationalizations to justify the omission of the treating physician opinion from the ALJ decision, noting that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." (Def. Brief at 18) (quoting *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993)). However, form reports are only "weak evidence" when they are "unaccompanied by thorough written reports." *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) (citing *Brewster v. Heckler,* 786 F.2d 581, 585 (3d Cir.1986)). Here, the treating physician's opinion was accompanied by his longitudinal treatment record. Moreover, when opinions are conclusory, SSR 96-5p emphasizes to the adjudicator the importance of making 'every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us.'" *Ferari v. Astrue,* CIV.A. 1:07-CV-01287, 2008 WL 2682507 at *6 (M.D. Pa. July 1, 2008) (Kane, C.J.). Regardless, the Court cannot uphold a decision based on post-hoc rationalizations. *See Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 305 (3d Cir. 2013) (Although a Court may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned," review must be based on "the administrative record [that was] already in existence" before the

> agency, not "some new record made initially in the reviewing court or post-hoc rationalizations made after the disputed action). The Court is not in a position to weight Dr. Taylor's opinion in the first instance. The Court recommends remand for the ALJ to evaluate Dr. Taylor's opinion.

*Id.*; *see also* 20 C.F.R. § 404.1527(e)(2)(ii) ("the administrative law judge *must* explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge *must do* for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us") (emphasis added). The Court recommends remand for the ALJ to consider Dr. Gliebus's opinion.

Additionally, Dr. Gliebus was an acceptable medical source. (Tr. 583).; 20 C.F.R. §404.1527(a). Dr. Gliebus was also a treating source because Dr. Gliebus treated Plaintiff "a number of times and long enough to have obtained a longitudinal picture of [Plaintiff's] impairment[s]." 20 C.F.R. § 404.1527(c)(2). Dr. Gliebus's statement is a medical opinion "on the issue(s) of the nature and severity of [Plaintiff's] impairment(s)," and was not a statement on an issue reserved to the Commissioner. 20 C.F.R. §404.1527(c)(2). Thus, the ALJ must assign Dr. Gliebus's opinion controlling weight if it is well-supported and not inconsistent with other substantial evidence. *Id.*

## 1.     Well-supported

The treating source opinion must be well-supported. *See* 20 C.F.R. §404.1527(c)(2). The Administration "changed the term 'fully supported' to 'well-supported' because" the Administration:

> [A]greed with commenters who pointed out that 'fully supported' was unclear and that, more important, it was an impractically high standard which, even if it were attainable, would essentially make any opinion superfluous. We believe that the new term, 'well-supported,' is more practicable and more reasonable; it should make clear that we will adopt opinions that are well-supported by medically acceptable clinical and laboratory diagnostic techniques unless they are inconsistent with substantial evidence in the record.

Standards for Consultative Examinations and Existing Medical Evidence, 56 FR 36932–01 at 36936. The Administration also explained:

> Some commenters were concerned that the proposed language of §§ 404.1527(b) and (c), and 416.927(b) and (c) permitted us to discount a treating source's apparently unsupported opinion without recontacting the source, and that the rules placed highly restrictive conditions on obtaining additional information from treating sources.
>
> Response: To the contrary, recontact with treating sources to complete the case record and to resolve any inconsistencies in the evidence is one of the principal provisions of this set of rules. See §§ 404.1512(d) and 416.912(d) of these final regulations. Far from being restrictive, the intent of these rules is to require such contacts.

Standards for Consultative Examinations and Existing Medical Evidence, 56 FR 36932–01, 36951–36952; *see also* 20 C.F.R. § 404.1512(d) ("We will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports"); SSR 96-5p ("Because

treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion").

In other cases before the undersigned, Defendant contends that the Regulations no longer require recontact based on 20 C.F.R. §404.1520b. However, while 20 C.F.R. §404.1520b allows an ALJ to request a consultative examination, or obtain information from other sources, rather than recontacting a treating source, 20 C.F.R. §404.1512(e) still provides that "[g]enerally, we will not request a consultative examination until we have made every reasonable effort to obtain evidence from your own medical sources." *Id.* As the commentary to 20 C.F.R. §404.1520b explains:

> [W]e disagree that these rules would permit adjudicators to purchase CEs rather than develop evidence from a person's medical source(s). We have regulations that govern the purchase of CEs, and those regulations provide, in part, that "Generally, we will not request a consultative examination until we have made every reasonable effort to obtain evidence from your own medical sources." Other CE regulations underscore this point by providing that "If your medical sources cannot or will not give us sufficient medical evidence about your impairment, we may ask you to have one or more physical or mental examinations. Our CE regulations also provide that before purchasing a CE, we will consider your "existing medical reports." It is also important to note that, subject to certain requirements, "your treating source will be the preferred source to do the purchased

examination." We believe these regulations provide sufficient safeguards against any potential abuse of the CE process.

How We Collect and Consider Evidence of Disability, 77 FR 10651-01.

Moreover, 20 C.F.R. §404.1520b does not automatically exempt the ALJ from recontacting treating sources. The Commentary explains:

> [T]here are times when we would still expect adjudicators to recontact a person's medical source first; that is, when recontact is the most effective and efficient way to obtain the information needed to resolve an inconsistency or insufficiency in the evidence received from that source. In the NPRM, **we also gave two examples of situations where we would expect adjudicators to contact the medical source first**, **because the additional information needed is directly related to that source's medical opinion.** In fact, **we expect that adjudicators will often contact a person's medical source(s) first whenever the additional information sought pertains to findings, treatment, and functional capacity**, because the treating source may be the best source regarding these issues.

How We Collect and Consider Evidence of Disability, 77 FR 10651-01 (emphasis added). One of the examples in the NPRM was when there was an alleged lack of objective supported for a treating source medical opinion. How We Collect and Consider Evidence of Disability, 76 FR 20282-01. Consequently, recontact is still required when the issue is an alleged lack of support for a treating source medical opinion. *Id.* Both of these sources are entitled to *Auer* deference. *Auer* deference "ordinarily calls for deference to an agency's interpretation of its own ambiguous regulation." *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166, 183

L. Ed. 2d 153 (2012) (citing *Auer v. Robbins*, 519 U.S. 452, 117 S. Ct. 905, 137 L. Ed. 2d 79 (1997)).

The ALJ would have erred in finding that Dr. Gliebus's opinion was not well-supported. Providers noted multiple objective findings, including extremity paresthesias and diminished sensation (Tr. 344); diminished extremity sensation (Tr. 585); weight gain (Tr. 586-91); severe vitamin D deficiency (Tr. 434); abnormal EMG findings (Tr. 368); lower extremity and core weakness (Tr. 419); motor deficits in the left lower extremity, antalgic gait, and positive bilateral facet loading (Tr. 586-91); decreased upper and lower extremity strength; decreased endurance; limited strength in her knees and hips; and significant limitations in walking (Tr. 491-99); elevated ANA level consistent with lupus (Tr. 460), sleep study indicating hypersomnolence (Tr. 421-25, 488-89); reduced reflexes, reduced vibration in both legs, and antalgic gait (Tr. 428-31); "wobbling gait noted;" (Tr. 496); poor balance and poor gait. (Tr. 564). Moreover, there is no evidence in the record that the ALJ attempted to recontact Dr. Gliebus. Doc. 9. When "additional information sought pertains to findings, treatment, and functional capacity," specifically an alleged lack of objective support, the ALJ should recontact the treating source. *See* How We Collect and Consider Evidence of Disability, 77 FR 10651-01; How We Collect and Consider Evidence of Disability, 76 FR 20282-01.

In another case before the undersigned, the Defendant argued that the ALJ's decision not to recontact was somehow unreviewable by the District Court. *See Rowe v. Colvin*, No. CV 3:15-1448, 2016 WL 3655576 (M.D. Pa. July 8, 2016). Similarly, Defendant may argue that the ALJ only needs to get an updated medical opinion when, in the opinion of the ALJ, there is a reasonable possibility that the new evidence would change their mind, and this conclusion is also unreviewable. *Chandler* notes that:

> The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it. Only where "additional medical evidence is received that *in the opinion of the [ALJ]* ... may change the State agency medical ... consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing," is an update to the report required. SSR 96–6p (July 2, 1996) (emphasis added). The ALJ reached no such conclusion in this case.

*Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).

First, as discussed below, *Chandler* is dicta as applied to the case at hand because in *Chandler*, there were no treating source medical opinions before the ALJ. *Chandler* merely holds that an ALJ may rely on a non-examining, non-treating opinion that is uncontradicted by any other medical opinion in the record. Cases where at least some evidence is entitled to the deference of the treating source rule are very different from cases where no evidence is entitled to deference. Second, *Chandler* cites no legal authority for the premise that this conclusion is unreviewable. Other cases conclude that an ALJ's decision is

unreviewable only if specific regulatory or statutory authority provides that the particular decision is unreviewable. *See Traynor v. Comm'r of Soc. Sec.,* No. 13-1364(NLH), 2016 WL 54672, at \*4 (D.N.J. Jan. 5, 2016) (citing 20 C.F.R. § 404.959 (ALJ's decision to dismiss case is unreviewable)); *Purter v. Heckler*, 771 F.2d 682, 692-93 (3d Cir. 1985) ("where an ALJ correctly determines that reopening of a previously adjudicated claim is barred by *res judicata,* the district court is without jurisdiction to review that decision" because "section 405(g) limits judicial review to 'final decisions of the Secretary made after a hearing'") (internal quotations and citations omitted). Third, and most importantly, the undersigned is not holding that the ALJ must recontact the treating physician or must obtain an updated medical opinion from the non-examining source. The undersigned merely holds that the evidence, as it stands, is insufficient to reject the treating source opinion. The undersigned is not dictating to the ALJ how to cure this error or further develop the record. For instance, the ALJ could choose instead to have a consultative examination. Thus, whether the decision to recontact is unreviewable is irrelevant, because the decision that substantial evidence supports the denial as the record presently exists is certainly reviewable, and that is what the undersigned holds here.

## 2.    Substantial Inconsistent Evidence

The ALJ must assign controlling weight to any well-supported treating source medical opinion unless the ALJ identifies substantial inconsistent evidence. *See* 20 C.F.R. §404.1527(c)(2). The Third Circuit has held that a medical opinion from a non-treating, non-examining source who did not review a complete record was "not substantial." *Morales v. Apfel*, 225 F.3d 310 (3d Cir. 2000).[5] In *Brownawell v. Comm'r Of Soc. Sec.*, 554 F.3d 352 (3d Cir. 2008), the only other precedential decision addressing an ALJ who relied on a non-treating, non-examining source who did not review a complete record to reject a treating source opinion, the Third Circuit also remanded. *See Brownawell*, 554 F.3d at 352. In contrast, in *Brown v. Astrue*, 649 F.3d 193 (3d Cir. 2011), the Third Circuit affirmed where there were two non-treating opinions, one from a source who reviewed the entire record. *Id. see also Kreiser v. Colvin*, No. 3:15-CV-1603, 2016 WL 704957, at *13 (M.D. Pa. Feb. 23, 2016) (Noting that expert "reviewed records…through November 2012" and "the record does not appear to contain….treatment records which post date [the expert's] opinion").

In *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500 (3d Cir. 2009), there were three non-treating medical opinions and one treating medical opinion, but the

---

[5] The Social Security Administration abolished the policy of non-acquiescence in 1990 with the promulgation of 20 C.F.R. §404.985. *Id.*  An ALJ must follow all precedential Circuit Court decisions if more than 120 days have passed since the decision was issued. *See* 20 C.F.R. §404.985(b).

Court held that the non-treating medical opinions did not provide good enough reason to reject the treating source medical opinion because they were "perfunctory" and omitted significant objective findings. *Id*. at 505; *see also Boyer v. Colvin*, No. CV 1:14-CV-730, 2015 WL 6438870, at *9 (M.D. Pa. Oct. 8, 2015) (Non-examining state agency opinion was insufficient to reject treating source opinion where state agency physician "mischaracterized the record"). *Diaz* is consistent with SSR 96-6p, which provides that:

> The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker. For example, the opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources.

> For this reason, the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist.

*Id.*

In similar cases before the undersigned, Defendant frequently cites *Brown v. Astrue*, 649 F.3d 193 (3d Cir. 2011); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356 (3d Cir. 2011); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 201 (3d Cir.

2008); *Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999); *Jones v. Sullivan*, 954 F.2d 125 (3d Cir. 1991); *Cummings v. Colvin*, 129 F. Supp. 3d 209, 216 (W.D. Pa. 2015); and *Gallo v. Colvin*, No. 4:15-CV-0167, 2016 WL 2936547, at *1 (M.D. Pa. May 13, 2016). [6] None of these cases support Defendant's claims. *Jones* was decided before the SSA promulgated the controlling weight provision, and involved multiple consistent non-treating opinions that supported the ALJ's determination. *See Jones*, 954 F.2d at 129.  In *Brown* and *Gallo*, the non-treating, non-examining source reviewed a complete record. *Brown*, 649 F.3d at 196; *Gallo*, No. 4:15-CV-0167, 2016 WL 2936547, at *1. In *Chandler*, *Johnson*, and *Plummer*, the ALJ was not faced with rejecting a treating source medical opinion with non-treating source opinions. In *Johnson* the treating source medical opinion supported the ALJ's decision because it indicated the claimant did not become disabled until after the date last insured.  *Johnson*, 529 F.3d at 201-03 In *Plummer*, the ALJ relied on three *treating* source medical opinions to reject another treating source

---

[6] Defendant frequently cites these cases for the first time in objections, which precludes the undersigned Magistrate Judge from meaningfully addressing them. When parties "raise [an] argument…or the first time in her objections to the Magistrate Judge's Report and Recommendations," Courts may "deem this argument waived. *Jimenez v. Barnhart*, 46 F. App'x 684, 685 (3d Cir. 2002) (citing *Laborers' Int'l Union of N.A. v. Foster Wheeler Corp.,* 26 F.3d 375, 398 (3d Cir.1994)). However, the undersigned will address these cases because Defendant often cites them, without acknowledging that *Morales* and *Brownawell* are binding, precedential decisions that actually address an ALJ who rejects a treating source medical opinion with only a single non-treating, non-examining medical source opinion and/or lay reinterpretation of medical evidence.

medical opinion. *Plummer*, 186 F.3d at 431 (Multiple treating providers opined Plaintiff had "no significant functional limitations").

In *Chandler* there was no treating source medical opinion before the ALJ. *Chandler*, 667 F.3d at 360-63. There were statements from a nurse practitioner, but a nurse practitioner is not an acceptable medical source. *Id.* "[O]nly 'acceptable medical sources' can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight." SSR 06-3p. Consequently, they may never be entitled to controlling weight and are not entitled to the treating source rule. *See* 20 C.F.R. §404.1527(c)(2); SSR 06-3p. The claimant submitted two medical opinions in support of her claim, but not until after the ALJ decision. *Chandler*, 667 F.3d at 360. The Third Circuit excluded these from consideration because Plaintiff had no good cause for not submitting them prior to the ALJ decision. *Id.* (citing *Matthews v. Apfel*, 239 F.3d 589, 595 (3d Cir. 2001).

The exclusion of the treating source opinions was significant because the role of the Court is generally limited to review "based on the record that was made before the ALJ." *Matthews*, 239 F.3d at 593. The Court in *Matthews* explained:

> It might seem ... that the district judge and we would be free to consider the new evidence that was before the Appeals Council in deciding whether the decision denying benefits was supported by the record as a whole. And of course this is right when the Council has accepted the case for review and made a decision on the merits, based on all the evidence before it, which then becomes the decision

> reviewed in the courts. It is wrong when the Council has refused to review the case. For then the decision reviewed in the courts is the decision of the administrative law judge. The correctness of that decision depends on the evidence that was before him. He cannot be faulted for having failed to weigh evidence never presented to him....

*Id.* (quoting *Eads v. Sec'y of Dep't of Health & Human Servs.*, 983 F.2d 815, 817

(7th Cir. 1993)). The Court continued:

> Our holding is also in accord with sound public policy. We should encourage disability claimants to present to the ALJ all relevant evidence concerning the claimant's impairments. If we were to order remand for each item of new and material evidence, we would open the door for claimants to withhold evidence from the ALJ in order to preserve a reason for remand. *See Szubak*, 745 F.2d at 834 ("A claimant might be tempted to withhold medical reports, or refrain from introducing all relevant evidence, with the idea of obtaining another bite of the apple if the Secretary decides that the claimant is not disabled.") (quotation omitted); *Wilkins,* 953 F.2d at 97 (Chapman, J., dissenting) ("By allowing the proceedings to be reopened and remanded for additional evidence, ... the majority is encouraging attorneys to hold back evidence and then seek remand for consideration of evidence that was available at the time of the ALJ hearing."). Instead, we believe that it is a much sounder policy to require claimants to present all material evidence to the ALJ and prohibit judicial review of new evidence unless there is good reason for not having brought it before the ALJ. Such a holding is instrumental to the speedy and orderly disposition of Social Security claims.

*Matthews v. Apfel*, 239 F.3d 589, 595 (3d Cir. 2001).

   *Chandler* also mischaracterizes the existing case law. *Chandler* states "[w]e

have permitted reliance on records much older than those presenting in this case.

*See, e.g., Morales v. Apfel,* 225 F.3d 310, 312–13 (3d Cir.2000) (upholding a 1997

ALJ decision based on records from 1989 through 1994)." *Chandler v. Comm'r of*

*Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). As discussed above, *Morales* did not uphold the ALJ decision. *See Morales v. Apfel*, 225 F.3d 310, 312 (3d Cir. 2000) ("Because the Commissioner's decision is not supported by substantial evidence, we reverse the district court.").

*Cummings* erroneously relies on *Chandler* without recognizing that *Chandler* did not involve a treating source medical opinion before the ALJ. *Cummings*, 129 F. Supp. 3d at 216. The District Court in *Cummings* wrote that "[i]f *Doak* actually stood for the rule espoused by Plaintiff, the Court of Appeals in *Chandler* would have surely attempted to reconcile its reasoning with that of *Doak.* It had to be aware of *Doak,* as the district court made it a centerpiece of its reasoning. Yet the Court of Appeals said nothing." *Cummings v. Colvin*, 129 F. Supp. 3d 209, 216 (W.D. Pa. 2015). The undersigned respectfully disagrees. *Doak* and *Chandler* dealt with separate issues. In *Chandler*, there were no treating source medical opinions before the ALJ, so the only issue was whether the ALJ could rely on an uncontradicted medical opinion from a non-treating, non-examining source. In *Doak*, there was a treating source medical opinion before the ALJ. Consequently, *Chandler*'s failure to cite *Doak* cannot be construed to limit *Doak*'s application to cases involving a treating source medical opinion before the ALJ.

The ALJ and the District Court are bound by precedential Third Circuit decisions. *See Burns v. Colvin*, No. 1:14-CV-1925, 2016 WL 147269, at *1 (M.D.

Pa. Jan. 13, 2016). "When binding precedent squarely addresses an issue, the District Court may not deviate from that precedent based on dicta." *Id.* (citing *Bd. of Trustees of Bricklayers & Allied Craftsmen Local 6 of New Jersey Welfare Fund v. Wettlin Associates, Inc.*, 237 F.3d 270, 275 (3d Cir.2001) ("To the extent it applied dicta ... the District Court erred")); *See Burns v. Colvin*, No. 1:14-CV-1925, 2016 WL 147269, at *1 (M.D. Pa. Jan. 13, 2016) (citing *Kool, Mann, Coffee & Co. v. Coffey,* 300 F.3d 340, 355 (3d Cir.2002) (Statements that are "not necessary to the actual holding of the case" are "dicta" and "not binding"); *Calhoun v. Yamaha Motor Corp.,* 216 F.3d 338, 344 n. 9 (3d Cir.2000) ("Insofar as this determination was not necessary to either court's ultimate holding, however, it properly is classified as dictum. It therefore does not possess a binding effect on us pursuant to the 'law of the case' doctrine."); *Chowdhury v. Reading Hosp. & Med. Ctr.,* 677 F.2d 317, 324 (3d Cir.1982) ("[D]ictum, unlike holding, does not have the strength of a decision 'forged from actual experience by the hammer and anvil of litigation,' a fact to be considered when assessing its utility in the context of an actual controversy. Similarly, appellate courts must be cautious to avoid promulgating unnecessarily broad rules of law.") (quotations omitted); 20 C.F.R. § 404.985(a)("We will apply a holding in a United States Court of Appeals decision that we determine conflicts with our interpretation of a provision of the Social

Security Act or regulations unless the Government seeks further judicial review of that decision or we relitigate the issue presented in the decision").[7]

Similarly, as the Third Circuit explained in *Jamison v. Klem*, 544 F.3d 266, 278 n. 11 (3d Cir. 2008):

> We also reject the District Court's reliance on *Voils v. Hall,* 151 Fed.Appx. 793, 795 (11th Cir.2005). We have steadfastly attempted to discourage District Courts as well as attorneys from relying on nonprecedential opinions of this court. *See* Third Circuit Internal Operating Procedure 5.7 (indicating that "the court by tradition does not cite to its not precedential opinions as authority"). *See also, Fallon Elec. Co. v. Cincinnati Insur. Co.,* 121 F.3d 125, 128 n. 1 (3d Cir.1997) ("[We] do not regard such opinions as binding precedent."). We do not accept these opinions as binding precedent because, unlike precedential opinions, they do not circulate to the entire court before they are filed. Accordingly, not every judge on the court has had an opportunity to express his/her views about the opinion before it is filed.
>
> Here, the District Court relied on a decision that is not only not precedential, it is not even a decision of a panel of this court. Accordingly, we will not explain why we think that decision is ill-advised and poorly reasoned.

*Id.* at 278 n. 11. The District Court may not deviate from binding precedent in

*Brownawell*, *Morales*, *Diaz*, and *Brown* based on non-precedential decisions.

---

[7] The Social Security Administration abolished its policy of nonacquiescence in 1990. *See Hyatt v. Barnhart*, 315 F.3d 239, 242 (4th Cir. 2002) ("The SSA ended its policy of nonacquiescence"); *Mannella v. Astrue*, No. CV06-469-TUC-CKJ BPV, 2008 WL 2428868, at *14 (D. Ariz. Feb. 20, 2008), *report and recommendation adopted in part, rejected in part,* No. CIV06-469-TUC-CKJ BP, 2008 WL 2428869 (D. Ariz. June 12, 2008) ("The Social Security Administration followed a 'nonacquiescence' policy for a number of years…The Social Security Administration ("SSA") has since issued regulations which require that the SSA apply a Circuit Court of Appeals decision"); 20 C.F.R. §404.985(a).

*Brownawell*, 554 F.3d at 352; *Morales*, 225 F.3d at 317; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500 (3d Cir. 2009); *Brown*, 649 F.3d at 196.

The case law is consistent with SSR 96-6p, which provides that an ALJ may only credit a non-treating, non-examining source over a treating source in "appropriate circumstances," such as when the non-treating, non-examining source was able to review a "complete case record…which provides more detailed and comprehensive information than what was available to the individual's treating source." *Id.* This may be only an example of "appropriate circumstances," but the phrase should be construed as requiring a similarly compelling reason. *See Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 223, 128 S. Ct. 831, 838, 169 L. Ed. 2d 680 (2008) ("the general term should be understood as a reference to subjects akin to the one with specific enumeration").

The ALJ is bound by SSR 96-6p and SSR 96-2p. *See* 20 C.F.R. § 402.35(b)(1) (Social Security Rulings are "binding on all components of the Social Security Administration"). Moreover, *Auer* deference "ordinarily calls for deference to an agency's interpretation of its own ambiguous regulation." *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166, 183 L. Ed. 2d 153 (2012) (citing *Auer v. Robbins*, 519 U.S. 452, 117 S. Ct. 905, 137 L. Ed. 2d 79 (1997)). SSR 96-6p is the Social Security Administration's interpretation of 20 C.F.R. §404.1527(c), so it is entitled to deference by the Courts. *See* SSR 96-6p.

In contrast, Defendant's position in this case is nothing more than a "'convenient litigating position,'" or a '*post hoc* rationalizatio[n]' advanced by an agency seeking to defend past agency action against attack." *SmithKline Beecham Corp.*, 132 S. Ct. at 2166-67 (quoting *Bowen v. Georgetown Univ. Hospital,* 488 U.S. 204, 213, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988) *Auer, supra,* at 462, 117 S.Ct. 905)).

*Morales*, *Brown*, and SSR 96-6p are all consistent with the prohibition on lay reinterpretation of evidence, because a source who reviews a complete record obviates the need for the ALJ to reinterpret medical evidence. *See Burns v. Colvin*, No. 1:14-CV-1925, 2016 WL 147269, at *1 (M.D. Pa. Jan. 13, 2016); *Tilton v. Colvin*, No. 1:14-CV-02219-YK-GBC, 2016 WL 1580003, at *1 (M.D. Pa. Mar. 31, 2016), *report and recommendation adopted,* No. 1:14-CV-2219, 2016 WL 1569895 (M.D. Pa. Apr. 19, 2016) (citing *Frankenfield v. Bowen,* 861 F.2d 405, 408 (3d Cir. 1988); *Doak v. Heckler,* 790 F.2d 26, 29–30 (3d Cir. 1986); *Ferguson v. Schweiker,* 765 F.2d 31, 37, 36–37 (3d Cir. 1985); *Kent v. Schweiker,* 710 F.2d 110, 115 (3d Cir. 1983); *Van Horn v. Schweiker,* 717 F.2d 871, 874 (3d Cir. 1983); *Kelly v. R.R. Ret. Bd.,* 625 F.2d 486, 494 (3d Cir. 1980); *Rossi v. Califano,* 602 F.2d 55, 58–59, (3d Cir. 1979); *Fowler v. Califano,* 596 F.2d 600, 603 (3d Cir. 1979); *Gober v. Matthews,* 574 F.2d 772, 777 (3d Cir. 1978)). These "cases hold that, even under the deferential substantial evidence standard of review, lay

reinterpretation of medical evidence is not inconsistent substantial evidence sufficient to reject an uncontradicted treating source medical opinion." *Id.* (internal quotation omitted); *see also*   Fed.R.Evid. 702, 1972 Advisory Committee Notes ("An intelligent evaluation of facts is often difficult or impossible without the application of some scientific, technical, or other specialized knowledge ...'There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute' ") (quoting Ladd, Expert Testimony, 5 Vand.L.Rev. 414, 418 (1952))). If a non-examining source is unable to review the complete case record, the ALJ will be required to reinterpret the remainder of the record in order to reject a treating source opinion.

The Social Security Administration retained, rather than abrogated, this common-law when it promulgated 20 C.F.R. §404.1527(c). *Id.* (citing *Burns v. Colvin,* No. 1:14–CV–1925, 2016 WL 147269 (M.D. Pa. Jan. 13, 2016). After these cases were decided, the Social Security Administration promulgated regulations addressing medical opinions for the first time. *See* Standards, 56 FR 36932-01 at 36936. Regulatory enactments retain, rather than abrogate, pre-existing common law unless the enactments are incompatible with existing

common-law or there is evidence of a clear intent to abrogate. *See Burns v. Colvin*, No. 1:14-CV-1925, 2016 WL 147269 (M.D. Pa. Jan. 13, 2016) (citing *United States v. Texas*, 507 U.S. 529, 534, 113 S.Ct. 1631, 123 L.Ed.2d 245 (1993); *Sebelius v. Cloer*, ——U.S. ——, 133 S.Ct. 1886, 1896, 185 L.Ed.2d 1003 (2013); *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992); *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 543, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994)). The party asserting that the enactment abrogates common law bears the burden of overcoming this presumption. *See Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 521, 109 S.Ct. 1981, 104 L.Ed.2d 557 (1989).

The controlling weight provision, 20 C.F.R. §404.1527(c)(2), codifies the treating source rule and is compatible with *Frankenfield*, *Doak*, *Ferguson*, *Kent*, *Van Horn*, *Kelly*, *Rossi*, *Fowler*, and *Gober*. *See Burns v. Colvin*, No. 1:14-CV-1925, 2016 WL 147269 (M.D. Pa. Jan. 13, 2016). Specifically, 20 C.F.R. § 404.1527(c)(2) provides that, if a treating source opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record" the ALJ must "give it controlling weight." *Id.* The Regulations do not define other "inconsistent….substantial evidence." *Id. Frankenfield*, *Doak*, *Ferguson*, *Kent*, *Van Horn*, *Kelly*, *Rossi*, *Fowler*, and *Gober* hold that lay reinterpretation of medical evidence does not constitute "inconsistent . . . substantial evidence." *See*

*Gober*, 574 F.2d at 777; *Frankenfield*, 861 F.2d at 408; *Doak*, 790 F.2d at 29-30; *Ferguson*, 765 F.2d at 36-37; *Kent*, 710 F.2d at 115; *Van Horn*, 717 F.2d at 874; *Kelly*, 625 F.2d at 494; *Rossi*, 602 F.2d at 58-59; *Fowler*, 596 F.2d at 603. *Frankenfield*, *Doak*, *Ferguson*, *Kent*, *Van Horn*, *Kelly*, *Rossi*, *Fowler* and *Gober* provide the definition for the regulatory language "inconsistent…substantial evidence." 20 C.F.R. §404.1527(c)(2). *Frankenfield*, *Doak*, *Ferguson*, *Kent*, *Van Horn*, *Kelly*, *Rossi*, *Fowler*, and *Gober* and 20 C.F.R. §404.1527(c)(2) are compatible.

The intent to codify, rather than change, the existing law with 20 C.F.R. §404.1527(c) has been noted by Congress, the Supreme Court, and the Social Security Administration itself. *See Burns v. Colvin*, No. 1:14-CV-1925, 2016 WL 147269, at *1 (M.D. Pa. Jan. 13, 2016) (citing Standards for Consultative Examinations and Existing Medical Evidence, 56 FR 36932–01 at 36934 ("[T]he majority of the circuit courts generally ... agree that treating source evidence tends to have a special intrinsic value by virtue of the treating source's relationship with the claimant ... [and] if the Secretary decides to reject such an opinion, he should provide the claimant with good reasons for doing so. We have been guided by these principles in our development of the final rule"); *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 823, 123 S.Ct. 1965, 1966, 155 L.Ed.2d 1034 (2003) ("The treating physician rule ... was originally developed by Courts of Appeals ...

In 1991, the Commissioner of Social Security adopted regulations approving and formalizing use of the rule in the Social Security disability program")).

Other Circuits have also explicitly retained the prohibition on lay reinterpretation of medical evidence. *See Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d Cir. 1998); *Moss v. Astrue*, 555 F.3d 556, 560 (7th Cir. 2009); *Burgess v. Astrue*, 537 F.3d 117, 131 (2d Cir. 2008); *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004); *Harbor v. Apfel*, 242 F.3d 375 (8th Cir. 2000); *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *Wilder v. Chater*, 64 F.3d 335, 337-38 (7th Cir. 1995). These cases continued to hold that an ALJ may not reject an uncontradicted treating source medical opinion with only lay reinterpretation of medical evidence. *Id.* When a Court of Appeals issues a decision that the SSA determines is contradictory to the intended interpretation of a regulation, the SSA must issue an Acquiescence Ruling. 20 C.F.R. § 404.985(b)(1) ("We will release an Acquiescence Ruling for publication in the Federal Register for any precedential circuit court decision that we determine contains a holding that conflicts with our interpretation of a provision of the Social Security Act or regulations no later than 120 days from the receipt of the court's decision."). More than 120 days has passed since these decisions, and the SSA has not promulgated an Acquiescence Ruling regarding any of these decisions. *Cf. Burns v. Colvin*, No. 1:14-CV-1925, 2016 WL 147269

(M.D. Pa. Jan. 13, 2016) (Absent a Social Security Ruling, Acquiescence Ruling, or Regulation indicating the SSA's interpretation, SSA's position in this case is "nothing more than a convenient litigating position, or a post hoc rationalization advanced by an agency seeking to defend past agency action against attack") (quoting *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166-21667 (2012)).

Congress has since amended the Act to require medical expert review of the medical evidence for any claimant who establishes any medically determinable impairment. *See* BIPARTISAN BUDGET ACT OF 2015, PL 114–74, November 2, 2015, 129 Stat 584, § 832(a). This change is particularly notable given the context of the other amendments to the Act, which were generally designed to save costs for the Administration.[8] *See North Haven Board of Education v. Bell,* 456 U.S. 512, 535, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982) ("Although postenactment developments cannot be accorded 'the weight of contemporary legislative history, we would be remiss if we ignored these authoritative expressions") (quoting *Cannon v. Univ. of Chi.,* 441 U.S. 677, 686 n. 7, 99 S.Ct. 1946, 60 L.Ed.2d 560

---

[8] Subtitle A, entitled "Ensuring Correct Payments and Reducing Fraud," expands fraud investigation units nationwide, prohibits the Commissioner from considering evidence from medical providers who have been convicted of certain crimes, creates "new and stronger penalties" for Social Security fraud, and requires electronic payroll data to improve efficient administration. *Id.* §§ 811–831.

(1979)); (*INS v. Cardoza–Fonseca,* 480 U.S. 421, 430, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987)).

Non-medical evidence, like activities of daily living that contradict the opinion, may only provide substantial inconsistent evidence in "extremely rare" cases. *See* Standards for Consultative Examinations and Existing Medical Evidence, 56 FR 36932-01 at 36936; *Torres v. Barnhart*, 139 F. App'x 411, 414 (3d Cir. 2005) (ALJ permissibly rejected treating opinion "in combination with other evidence of record including Claimant's own testimony"); *Kays v. Colvin*, No. 1:13-CV-02468, 2014 WL 7012758, at *7 (M.D. Pa. Dec. 11, 2014); *Marr v. Colvin*, No. 1:13-cv-2499 (M.D.P.A. April 15, 2015). However, the "non-medical" evidence must be truly "inconsistent" with the opinion. Standards for Consultative Examinations and Existing Medical Evidence, 56 FR 36932-01 at 36936; *see also Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005) ("the ALJ's decision fails to explain how Chunn's activities and behaviors are inconsistent with Dr. Ziolkow's characterization of her mental capacity.").

The ALJ would have erred in finding that Dr. Gliebus's opinion was inconsistent with other substantial evidence. The non-medical evidence did not contradict Dr. Gliebus's opinion. Plaintiff consistently reported and testified that she needed to use a cane to ambulate.  (Tr. 428, 430, 496, 523). This is not one of the "extremely rare" cases when an ALJ may reject a treating source opinion based

on reported activities of daily living. *See* Standards for Consultative Examinations and Existing Medical Evidence, 56 FR 36932-01 at 36936.

This leaves only the medical opinions from non-treating, non-examining sources who did not review the entire record. Dr. Mari-Mayans's opinion was sixteen months prior to August 22, 2013, the date of the ALJ decision and Dr. Park's opinion was fourteen months prior to August 22, 2013. (Tr. 360). These opinions occurred prior to Plaintiff's reports of needing to use a cane, and prior to Dr. Gliebus indicating that it was medically necessary, so their inability to review the entire record required the ALJ to engage in impermissible lay interpretation of medical evidence. *See Gober*, 574 F.2d at 777; *Frankenfield*, 861 F.2d at 408; *Doak*, 790 F.2d at 29-30; *Ferguson*, 765 F.2d at 36-37; *Kent*, 710 F.2d at 115; *Van Horn*, 717 F.2d at 874; *Kelly*, 625 F.2d at 494; *Rossi*, 602 F.2d at 58-59; *Fowler*, 596 F.2d at 603.

Dr. Mari-Mayans reviewed about fifty pages of evidence, and was unable to review the additional 300 pages of evidence submitted after the opinion. Dr. Mari-Mayans characterized the evidence reviewed as showing that Plaintiff's Guillain-Barre disorder had "almost complete[ly] resol[ved]" after a four day hospital stay, and that she continued to improve. (Tr. 122).. Dr. Park did not review any additional medical records. (Tr. 360). Dr. Park noted that there was "no updated" medical examination. (Tr. 360). Dr. Park explained that Plaintiff's condition was

expected to improve in six months, and specifically conditioned the opinion, writing "unless there is additional positive [medical examination]." (Tr. 360). Neither Dr. Park nor Dr. Mari-Mayans evaluated any medical impairments other than obesity and Guillain-Barre disorder. (Tr. 123, 360). The records reviewed by the non-examining sources indicate that Plaintiff was not yet using a cane. (Tr. 266).

Like *Diaz*, the non-examining opinions were "perfunctory" and omitted significant objective findings. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009). In contravention of SSR 96-6p, the non-examining sources provided essentially no explanation for the opinion. *See* SSR 96-6p ("the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the…explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist.").Unlike *Brown* or the example in SSR 96-6p, and like *Morales* and *Brownawell*, the non-examining sources failed to review a complete case record. *See Brownawell*, 554 F.3d at 352; *Morales*, 225 F.3d at 317; *Brown*, 649 F.3d at 196.

Read together, 20 C.F.R. §404.1527(c)(2), SSR 96-6p, SSR 96-5p, *Morales*, *Brownawell*, *Brown*, and the prohibition on lay reinterpretation of medical

evidence indicate that, generally, the ALJ will lack substantial evidence to assign less than controlling weight to a treating source opinion with only lay reinterpretation of medical evidence or an opinion from a non-treating, non-examining source who did not review a complete record. Harmonizing the Regulations, case law, SSRs, and other sources of authority into a consistent statement of the law regarding the treating physician rule reflects "the need for efficient administration of an obligatory nationwide benefits program" given "more than 2.5 million claims for disability benefits [filed] each year" because "the treating physician rule works to foster uniformity and regularity in Social Security benefits determinations made in the first instance by a corps of administrative law judges." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833, 123 S. Ct. 1965, 1971, 155 L. Ed. 2d 1034 (2003) (internal citations omitted). The "massive unexplained differences in the rate at which ALJs grant or deny benefits" heightens the need for the Courts to articulate clear rules. Harold J. Krent & Scott Morris, *Inconsistency and Angst in District Court Resolution of Social Security Disability Appeals* at 5 (Chi.-Kent Coll. of Law, Research Paper No. 2014-30, 2014), *available at* http://papers.ssrn.com/sol3/papers.cfm? abstract_id=2530158.

The ALJ has not provided a reason as compelling as the example in 96-6p for rejecting the treating source opinion with only a single non-treating, non-examining medical opinion. *See* SSR 96-6p; *Ali v. Fed. Bureau of Prisons*, 552

U.S. 214, 223, 128 S. Ct. 831, 838, 169 L. Ed. 2d 680 (2008) ("when a general term follows a specific one, the general term should be understood as a reference to subjects akin to the one with specific enumeration"). The Court recommends remanding the case for further evaluation of the treating source opinion evidence pursuant to SSR 96-6p, 20 C.F.R. §404.1527(c) and *Brownawell*, *Morales*, *Frankenfield*, *Doak*, *Ferguson*, *Kent*, *Van Horn*, *Kelly*, *Rossi*, *Fowler* and *Gober*. *See* 20 C.F.R. §404.1527(c)(2); SSR 96-6p; *Brownawell*, 554 F.3d at 352; *Morales*, 225 F.3d at 317; *Gober*, 574 F.2d at 777; *Frankenfield*, 861 F.2d at 408; *Doak*, 790 F.2d at 29-30; *Ferguson*, 765 F.2d at 36-37; *Kent*, 710 F.2d at 115; *Van Horn*, 717 F.2d at 874; *Kelly*, 625 F.2d at 494; *Rossi*, 602 F.2d at 58-59; *Fowler*, 596 F.2d at 603.

## B.     Other Allegations of Error

Because the Court recommends remand on these grounds, it declines to address Plaintiff's other allegations. A remand may produce different results on these claims, making discussion of them moot.  *See LaSalle v. Comm'r of Soc. Sec.*, No. CIV.A. 10-1096, 2011 WL 1456166, at *7 (W.D. Pa. Apr. 14, 2011).

## C.     Remedy

Remand, rather than reversal and award of benefits, is the appropriate remedy in this case. *See Markle v. Barnhart*, 324 F.3d 182, 189 (3d Cir. 2003)

("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation") (internal quotations omitted)).

## VI.   Conclusion

The undersigned recommends that the Court vacate the decision of the Commissioner pursuant to 42 U.S.C. § 405(g) and remand the case for further proceedings.

Accordingly, it is HEREBY RECOMMENDED:

1.   The decision of the Commissioner of Social Security denying Plaintiff's benefits under the Act be vacated and the case remanded to the Commissioner of Social Security to develop the record fully, conduct a new administrative hearing and appropriately evaluate the evidence.

2.   The Clerk of Court close this case.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a Magistrate Judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A Judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.

The Judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.


Dated: September 21, 2016                     _____s/Gerald B. Cohn_____
                                              GERALD B. COHN
                                        UNITED STATES MAGISTRATE JUDGE